# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Caitlin I. Horchuck,            :
           Petitioner        :
           :
        v.              :    No. 2004 C.D. 2016
           :    Submitted: September 1, 2017
Unemployment Compensation    :
Board of Review,            :
           Respondent    :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE J. WESLEY OLER, JR., Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                 **FILED: October 23, 2017**

Petitioner Caitlin I. Horchuck (Claimant), *pro se*, petitions for review of an order of the Unemployment Compensation Board of Review (Board), which reversed an Unemployment Compensation Referee's (Referee) decision granting benefits. The Board concluded that Claimant was ineligible for benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[1] relating to willful misconduct. We affirm the Board's order.

Claimant filed for unemployment compensation benefits after being discharged from her employment as a medical office assistant for Abington Memorial Hospital (Employer). The Lancaster UC Service Center (Service Center) issued a determination finding Claimant eligible for unemployment compensation

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

benefits. Employer appealed. A Referee conducted an evidentiary hearing on July 13, 2016, but no one appeared to testify on behalf of Claimant or Employer.[2] Pursuant to 34 Pa. Code § 101.51,[3] the Referee conducted the hearing in their absence and subsequently affirmed the Service Center's determination.[4] Employer appealed to the Board, and the Board issued an order remanding the case to a Referee in order to receive testimony on the issues of (1) Employer's nonappearance at the last hearing, and (2) whether Claimant was discharged for willful misconduct. The remand instructions further provided that if the Board found that Employer did not have good cause for its nonappearance at the first hearing, then the additional testimony and evidence on the merits may not be considered.

At the hearing, Employer presented the testimony of its practice manager, Sue Gibbons (Gibbons), and its director of talent acquisition, Amy Taylor O'Brien (O'Brien). (Certified Record (C.R.), Item No. 16.) Claimant testified on her own behalf. (*Id.*)

---

[2] Employer requested a continuance two days prior to the hearing due to a scheduling conflict that resulted in Employer's representatives not being able to attend. (C.R., Item No. 7.) The Referee denied the continuance, as Employer did not confirm that the person unable to attend was the sole, first-hand witness to the events leading to Claimant's discharge. (C.R., Item No. 9 at 1.) Further, the hearing transcript provides that Claimant called the hearing office at 10:41 a.m., four minutes prior to the scheduled start of the hearing, stating that she was going to be fifteen minutes late. (*Id.*) The Referee delayed the start of the hearing in an attempt to wait for Claimant, but the Referee started the hearing at 11:16 a.m. in order to stay on schedule with other hearings. (*Id.*)

[3] 34 Pa. Code § 101.51 provides:

If a party notified of the date, hour and place of a hearing fails to attend a hearing without proper cause, the hearing may be held in his absence. In the absence of all parties, the decision may be based upon the pertinent available records. The tribunal may take such other action as may be deemed appropriate.

[4] As neither party attended the hearing to provide testimony, the substance of the hearing involved the Referee identifying the documents made available to him and entering them into the record.

2

Regarding Employer's nonappearance at the first hearing, O'Brien testified that there was a change in staffing with Employer, which resulted in Employer having no one available to testify at the hearing. (*Id.* at 4.) Employer requested a continuance, which the Referee denied. (*Id.*) O'Brien further testified that Employer thought it had adequately conveyed that it was unable to make the hearing and was uncertain as to what other option Employer had other than not showing up at the first hearing. (*Id.*)

Regarding Claimant's willful misconduct, O'Brien testified to Employer's expectations of employees in Claimant's position. (*Id.* at 6.) One of these expectations is that all medical office assistants for Employer must pass an exam in order to become a certified medical office assistant within one year of being hired. (*Id.*) O'Brien testified that if Claimant failed the test, she would have another opportunity to pass, as long as she passed before the one-year deadline expired. (*Id.* at 8.) Employer hired Claimant on June 1, 2015, and her deadline to pass the certification exam was June 1, 2016. (*Id.* at 6.) Employer introduced evidence of Claimant's acknowledgement of this certification requirement and accompanying deadline. (*Id.* at Bd. Ex. 8.) O'Brien further testified that Claimant did not pass the exam, and Employer terminated Claimant's employment on June 1, 2016. (*Id.*) Gibbons, Claimant's direct supervisor, testified that Claimant took and failed her certification exam on May 26, 2016. (*Id.* at 11.) Further, Gibbons testified that she had reminded Claimant of her deadline multiple times over the preceding year. (*Id.* at 11-12.)

Claimant, on her own behalf, testified that she attempted the certification exam in May of 2016, but she did not pass. (*Id.* at 13.) Claimant further testified that she would have taken the test earlier, but the testing center forced her

3

to reschedule multiple times due to scheduling and technological issues. (*Id.*) Claimant, however, did not provide any documentation from the testing center to that effect.

Following the hearing, the Board issued a decision, reversing the Referee's decision and finding Claimant ineligible for benefits. (C.R., Item No. 17.) Accordingly, the Board considered all of the evidence presented in assessing the merits of the case. (*Id.*) The Board issued its own findings of fact and conclusions of law. The Board made the following relevant findings:

1. The claimant was last employed as a medical office assistant by the Abington Hospital from June 1, 2015, at a final rate of $15.90 per hour, and her last day of work was June 1, 2016.

2. The claimant was told previous to being hired that if she accepted the position she would have one year in which to become certified as a certified medical assistant.

3. The claimant was also told on June 9, 2015, that she had one year in which to receive her card showing that she was a certified medical assistant.

4. The claimant was further informed that just taking the test was not sufficient, she had to actually have the card proving that she had just passed the test.

5. The claimant was additionally made aware that if she did not pass the test the first time it could take up to three more months to pass the test.

6. The employer would accept the test results from two difference [sic] certifying organizations.

7. In December of 2015, the employer reminded the claimant that she needed to take the test.

8. The claimant was having personal problems.

9. The claimant alleged that the testing agency kept rescheduling the test but the claimant did not provide the documentation to her supervisor to show that the test was being rescheduled.

4

10. The claimant did not take the test until May 26, 2016.

11. The claimant did not pass the test.

12. The claimant was discharged because she did not pass the test.

13. As of the time of the second hearing, the claimant had not passed the test.

14. Due to a change in staffing, the employer had no one available to attend the first hearing.

15. As a result, the employer requested a continuance.

16. The continuance was denied.

(*Id.*)

The Board concluded that Employer had good cause for its nonappearance at the first hearing, as Employer had no one available to attend the hearing, and concluded that Employer discharged Claimant for willful misconduct. With regard to the latter conclusion, the Board reasoned:

> Since the claimant was discharged, the employer has the burden of establishing that the discharge was for willful misconduct in connection with her work, in accordance with the provisions of Section 402(e) of the Law.
>
> The employer has met this burden. The claimant was aware of the employer's policy that she had to take and pass the test in one year. The claimant did not have good cause for her failure to take the test in a timely manner. As a result, the claimant did not have time in which to retake the test. In the absence of good cause for her actions, the claimant's failure to take the test in a timely manner rises to the level of willful misconduct.

(*Id.*) Claimant now petitions this Court for review.

On appeal,[5] Claimant argues that the Board abused its discretion by remanding for a second hearing and erred in concluding that Employer had good cause for its failure to appear. Claimant also argues substantial evidence does not exist to support the Board's findings of fact numbers 4 and 5. Finally, Claimant argues that the Board erred in concluding that Claimant's actions constituted willful misconduct because Claimant had good cause for violating the condition of employment.

First, we address Claimant's argument that the Board abused its discretion by remanding for a second hearing and then erred in concluding that Employer had good cause for its failure to appear at the first hearing. Claimant avers that Employer did not provide adequate reasoning for its nonappearance at the first hearing, and, therefore, the Board's remand constituted an abuse of discretion. Section 504 of the Law[6] provides the Board with discretion to remand for an additional hearing and, absent an abuse of that discretion, this Court will not overturn the Board's decision. *Fisher v. Unemployment Comp. Bd. of Review*, 696 A.2d 895,

---

[5] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[6] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 824. Section 504 of the Law provides, in pertinent part:

> The board shall have power, on its own motion, or on appeal, to remove, transfer, or review any claim pending before, or decided by, a referee, and in any such case and in cases where a further appeal is allowed by the board from the decision of a referee, may affirm, modify, or reverse the determination or revised determination, as the case may be, of the department or referee on the basis of the evidence previously submitted in the case, *or direct the taking of additional evidence.*

(Emphasis added.)

6

897 (Pa. Cmwlth. 1997). Further, Section 101.104 of the Board's regulations provide that "the Board may direct the taking of additional evidence, if in the opinion of the Board, the previously established record is not sufficiently complete and adequate to enable the Board to render an appropriate decision." 34 Pa. Code § 101.104(c). The Board has "broad discretion to decide what issues will be addressed at the remand hearing." *Primecare Medical, Inc. v. Unemployment Comp. Bd. of Review*, 760 A.2d 483, 487 (Pa. Cmwlth. 2000). Our Supreme Court has held that "[i]f a party fails to appear at a scheduled hearing, that party must show good cause for that failure before the Board will delay the final disposition of the case by remanding for additional hearings. Were it otherwise, there would be no incentive to appear at the initial hearing." *McNeill v. Unemployment Comp. Bd. of Review*, 511 A.2d 167, 169 (Pa. 1986). If the reasons proffered for a party's failure to attend a hearing are "clearly legally insufficient to support the finding of good cause," a remand is not necessary. *Volk v. Unemployment Comp. Bd. of Review*, 49 A.3d 38, 47 n.12 (Pa. Cmwlth. 2012).

Here, the Board directed the Referee on remand to "receive testimony and evidence on [E]mployer's reason for its nonappearance at the previous hearing" in addition to allowing the parties to introduce new evidence on the merits. (C.R., Item No. 13.) At the remand hearing, O'Brien testified that Employer's nonappearance was due to a change in staffing that resulted in a scheduling conflict with Employer. (C.R., Item No. 16 at 4.) Her testimony provided the following:

> OB    We had a change in staffing.
>
> R    Okay.
>
> OB    And so part of my responsibility became as part of that change to represent . . . our departments in unemployment hearings.
>
> R    Okay

7

OB    I received the Notice and was unable—my calendar did not allow us to attend and I reached out to [Gibbons] and she also—her calendar was not able to be freed up to attend at that time. So we had requested a continuance and were denied and so therefore we had no choice but to not appear to the hearing.

R    Okay. And the record is [Bd. Ex. 2,] and [Bd. Ex. 2] is e-mails sent from Marie Brant.

OB    She's my assistant.

R    Okay. So someone e-mailed requesting a continuance and the Referee's office responded this was received on July 11, 2016 and my office responded denied the request with the reason that the Employer should provide to show that a hospital representative is the Employer's sole firsthand witness of the events around the Claimant's separation. Were you aware . . .

OB    We—in our defense, we thought that it was clear when we requested the continuance so we weren't sure what else to say that we weren't available that day.

R    Okay. All right. So you believe that [Bd. Ex. 2] stated clearly that the hospital representative would not be available?

OB    Right.

(*Id.*) Based upon O'Brien's testimony, the Board determined that Employer established good cause for its nonappearance at the first hearing. (C.R., Item No. 17.)

Based upon O'Brien's testimony and the Board's reasoning, we cannot conclude that the Board abused its discretion by ordering a remand hearing. This Court has previously held that the Board did not abuse its discretion by ordering a remand hearing when a claimant did not appear at a hearing and provided no notice beforehand of his inability to participate. *Michael A. Tokarsky, Jr. Trucking, Inc. v.*

8

*Unemployment Comp. Bd. of Review*, 631 A.2d 686, 690 (Pa. Cmwlth. 1993). The Board is given "wide latitude" in making such decisions. *Clowney v. Unemployment Comp. Bd. of Review*, 421 A.2d 515, 516 (Pa. Cmwlth. 1980).

Nor can we conclude that the Board erred in determining Employer had good cause for its nonappearance. Employer emailed the hearing office two days prior to the hearing to request a continuance, as no representative for Employer would be able to attend. (C.R., Item No. 16 at 4.) Further, O'Brien testified that it was her understanding that the email conveyed that Employer would be unable to attend the hearing due to a scheduling conflict. (*Id.*) The Board did not err in concluding that Employer had good cause for its nonappearance, as the nonappearance was not attributable to Employer's own negligence. *See Savage v. Unemployment Comp. Bd. of Review*, 491 A.2d 947, 950 (Pa. Cmwlth. 1985) (holding that claimant's own negligence is insufficient good cause, as a matter of law, to justify failure to appear at referee's hearing).

Next, we will address Claimant's argument that substantial evidence does not support the Board's findings of fact numbers 4 and 5. Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a decision. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive

on appeal only so long as the record taken as a whole contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984).

Regarding the Board's finding of fact number 4—*i.e.*, that Claimant was informed that merely taking the test was not sufficient and she had to have the card proving that she passed the test—Claimant argues that "any type of documentation" showing she passed would be sufficient. (Pet'r Br. at 5.) We disagree. At the hearing before the Referee, Employer presented evidence in the form of a document setting forth its guidelines regarding the certification exam. (C.R., Item No. 16, Bd. Ex. 7.) The document, signed by Claimant, states that a "copy of the certification card" must be forwarded to Employer during the twelve-month period in which Claimant had to pass her certification exam. (*Id.*) Accordingly, the Board's finding of fact number 4 is supported by substantial evidence.[7]

Turning to the Board's finding of fact number 5—*i.e.*, that Claimant was made aware that if she did not pass the certification exam on her first attempt then it could take up to three more months to pass the test—Claimant argues that if she did not pass, she would have been able to take the test two more times in a three-month period. (Pet'r Br. at 5.) This, also, is not in accord with the evidence presented at the Referee's hearing. O'Brien credibly testified that it could take up to three months to be able to take the test again if Claimant did not pass the first time, and that Employer recommends taking the test earlier if the individual has concerns about not passing the test the first time, so that they will have ample time

_____

[7] Moreover, whether Employer required Claimant to have a "certification card" or "any type of documentation" evidencing that she passed the certification exam is immaterial to our analysis, because it is undisputed that Claimant did not pass the exam during her period of employment with Employer.

10

to take the test again. (C.R., Item No. 16 at 8.) Further, Employer produced evidence in the form of a document, signed by Claimant, advising Claimant to take the test early, as there is a three-month waiting period before Claimant would be able to take the test again. (*Id.* at Bd. Ex. 8.) As such, the Board's finding of fact number 5 is supported by substantial evidence.

We now turn to Claimant's argument that the Board erred in concluding that Claimant's actions constituted willful misconduct. Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court. *Nolan v. Unemployment Comp. Bd. of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981).

Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." The employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

> (a) wanton or willful disregard of employer's interests, (b) deliberate violation of the employer's rules, (c) disregard of standards of behavior which an employer can rightfully expect of an employee, or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties and obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003). In cases where some form of further education or certification exam is a condition of continued employment, academic failure after a good-faith effort is not willful

11

misconduct. *Millersville State Coll., Pa. Dep't of Educ. v. Unemployment Comp. Bd. of Review*, 335 A.2d 857, 860 (Pa. Cmwlth. 1975). Where, however, the claimant makes the decision to not pursue studies that are required by the employer, there is willful misconduct. *Id.* The pertinent analysis is whether the claimant made a good-faith effort to take and pass the exam within the allotted time period. *Id.*

In *Primecare*, this Court was faced with an analogous situation to the instant case, as the claimant in *Primecare* was a registered nurse who was required to pass the nursing board examination and receive his permanent nursing license in order to remain employed. *Primecare*, 760 A.2d at 484. The claimant failed his examination, and the employer subsequently terminated his employment. *Id.* at 485. The Board, however, found that the claimant "made a great effort in preparation for the exam." *Id.* at 486. Specifically, the Board found that the claimant studied for approximately five hours a day for six months prior to taking the exam, sought advice from other nursing professionals, used study materials that were accredited and approved by the State Board of Nursing, and took two weeks off from his employment to study. *Id.* Based upon the claimant's diligence and good-faith effort, this Court affirmed the Board's award of benefits. *Id.* at 488.[8]

Here, Claimant was aware of her June 1, 2016, deadline to pass her certification exam, and Employer periodically reminded her of this. (C.R., Item No. 16 at 11-12.) Claimant was also aware that if she did not pass the test, she would have to wait up to three months until she could take it again. (*Id.* at 8.) Claimant took the test on May 26, 2016, six days prior to the deadline, and failed. (*Id.* at 11.)

---

[8] In *Primecare*, this Court analyzed the claimant's eligibility under Section 3 of the Law, 43 P.S. § 752, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, relating to public policy, and under Section 402(e), relating to willful misconduct. The rationale, however, is equally applicable in the instant case.

12

Claimant contends that personal problems and multiple scheduling changes by the testing center resulted in her not being able to pass her certification exam within the necessary time frame, thus giving rise to good cause for her conduct. At the hearing, Claimant testified to the issues she dealt with during her testing time frame. She testified as follows:

R     Okay. And so you were aware that you had to [pass the certification exam]?

C     Yes.

R     So why did you delay until May?

C     It wasn't – I mean . . .

R     You attempted, you know, because there is a chance that you could fail it. There is a chance you could have passed so why didn't you give yourself enough time so you know if you failed like it happened that you had enough time to fix it before[?]

C     No. The test and exam where I did schedule it at, they were rescheduling it on me. You know they were rescheduling. One time they had issues with their testing site and then another time their system was down. So I mean I was confident enough going in that I was going to be okay with the testing and everything.

R     Okay. You said earlier that you had the exam[] scheduled to hold in October.

C     Yes.

R     Why was the October date[] changed? Why was it rescheduled?

C     They were having issues with their testing sites. They were remodeling or their system was down. They didn't really give me too much information about it. Just I had to reschedule it.

R     So the reschedule was not (inaudible)?

C     I'm sorry. What was that?

R     Did you not request to reschedule the date?

13

C     No. I did reschedule. It was rescheduled for . . .

R     No. I'm asking were you the one who initiated the rescheduling of the date?

C     Yes. Yes. Well. No. No. No. They had to reschedule it because the time that I -- the date that I had to go there, they said that I couldn't come there that day.

R     Do you have anything here to prove that?

C     No I don't have any type of paperwork. They . . .

R     Okay. So it was rescheduled to sometime in December?

C     Um-hum. Yes. Yes.

R     So why was it again rescheduled in December?

C     They said the same thing. They were having problems. Their systems were down. There was like a virus in their testing site.

R     And they didn't provide you with an e-mail or anything that you could present?

C     They had – they sent me letters. Towards the end of June I had a small electrical fire in my house. I wasn't able to get a lot of items out of my home so a lot of my paperwork, different things were in the house, but I was in contact with the testing facility. They're supposed to send me out all the information. They haven't done that yet.

(*Id.* at 13-14.) Claimant was unable to provide any documentation evidencing the issues Claimant had with the testing center.[9] Further, Claimant did not provide any explanation as to why she chose to wait six months to reschedule aside from "family

---

[9] In her brief, Claimant appears to contradict the testimony set forth above. She contends that she gave the letters to her supervisor to place in her file, but her supervisor later denied that Claimant gave her the letters. (Pet'r Br. At 8.) Our review is limited to the record before the Board.

issues" and the fact that she felt "confident enough going in" that she would pass it the first time.  (*Id.* at 13.)

Here, unlike in *Primecare*, Claimant has made a scant showing of a good-faith effort leading up to her exam.[10]  Thus, the Board did not err in concluding that Claimant's conduct rose to the level of willful misconduct, and the Board did not err by failing to conclude that Claimant did not have good cause for her actions.

Accordingly, we affirm the order of the Board.

P. KEVIN BROBSON, Judge

---

[10] In her brief, Claimant also avers that Employer promised to provide some form of assistance to Claimant in regards to the exam but did not. (Pet'r Br. at 8.)  Claimant, however, introduced no evidence to that effect.  As such, it was Claimant's sole responsibility to obtain the certification, and Employer bore no responsibility to provide such assistance.  *See Pisarek v. Unemployment Comp. Bd. of Review*, 532 A.2d 54, 56 (Pa. Cmwlth. 1987).

15

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Caitlin I. Horchuck, : 
                 Petitioner : 
                                : 
        v. :   No. 2004 C.D. 2016
                                : 
Unemployment Compensation : 
Board of Review, : 
                 Respondent :

## *O R D E R*

AND NOW, this 23rd day of October, 2017, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge
