IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Yuzza Henderson,     :
    Petitioner   :
           :
 v.        : No. 1239 C.D. 2021
           :
Unemployment Compensation  :
Board of Review,     :
    Respondent  : Submitted: October 28, 2022

BEFORE: HONORABLE ANNE E. COVEY, Judge
    HONORABLE ELLEN CEISLER, Judge
    HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER        FILED: March 9, 2023

 Yuzza Henderson (Claimant) petitions for review, *pro se*, of the September 2, 2021 Order of the Unemployment Compensation Board of Review (Board) affirming the decision of a Referee to deny Claimant unemployment compensation (UC) benefits. The Board concluded that Claimant was ineligible for UC benefits because she was discharged from work for willful misconduct under Section 402(e) of the Unemployment Compensation Law (Law)[1] and denied Claimant's request for a remand hearing. We affirm the Board's Order.

## Background

 Claimant worked as a full-time case manager for the Philadelphia Housing Authority (Employer) from March 24, 2017, through September 25, 2020. Bd.'s

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee is ineligible for UC benefits for any week in which her unemployment is due to her discharge from work for willful misconduct. 43 P.S. § 802(e).

Finding of Fact (F.F.) No. 1. In the spring of 2020, Claimant's work hours were 9:00 a.m. to 5:00 p.m. *Id.* No. 2. She worked in Employer's office on Wednesdays and Fridays and worked remotely on Mondays, Tuesdays, and Thursdays. *Id.*

Claimant complied with her assigned work schedule until August 26, 2020. *Id.* Nos. 3-4. Beginning on August 26, 2020, Claimant did not report to work, submit time records, or contact her supervisor to report her absences. *Id.* No. 4. Claimant's supervisor tried several times to contact Claimant by phone and email and asked Claimant to return her calls, but Claimant did not respond. *Id.* Nos. 5-6. On September 25, 2020, Employer discharged Claimant for insubordination, neglect of duty, and unsatisfactory job performance. *Id.* No. 7.

Claimant filed a claim for UC benefits, which the local Service Center denied. The Service Center found, based on its review of the claim record, that Employer met its burden of proving that Claimant was insubordinate, thereby justifying her discharge for willful misconduct. Notice of Determination, 1/21/21, at 1. Therefore, the Service Center determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law.

Claimant appealed to the Referee, who held a telephone hearing on March 9, 2021. Claimant, appearing *pro se*, testified on her own behalf. Employer presented the testimony of Tiffany Pinkney, Employer's Title Compensation and Benefit Specialist, and Lauren Bishop, Employer's Director of Site-Based and Senior Programs.[2]

Ms. Bishop was Claimant's immediate supervisor at the time of her discharge. Notes of Testimony (N.T.), 3/9/21, at 18. Ms. Bishop testified that on August 20,

---

[2] Two other Employer witnesses were also present at the hearing but did not testify: Stacey Collins, Employer's Labor and Employee Relations Manager, and Zachary McNeil, Employer's Director of Resident Relations and Youth Program. *See* Notes of Testimony (N.T.), 3/9/21, at 2.

2

2020, she emailed Claimant about her failure to communicate to her what days she intended to be absent from work, but Claimant did not respond. *Id.* at 14; *see id.*, Ex. E-1. In her August 20, 2020 email, Ms. Bishop also directed Claimant to follow up with Employer's human resources consultant for "additional coaching . . . so as a team [they] could grow, move forward, and work on [their] communication." N.T., 3/9/21, at 14.

On August 26, 2020, Claimant sent a text message to Ms. Bishop, stating that "she wouldn't be reading [her] e[]mail because she wouldn't be present at [the] team meeting, and that her lawyer would be in touch with [human resources]." *Id.* at 12-13. After that date, Claimant stopped reporting to the office. *Id.* at 13. Ms. Bishop sent Claimant several emails about her work and upcoming deadlines, but she did not respond. *Id.* On September 16, 2020, Ms. Bishop called Claimant "to see if everything was okay," but Claimant did not answer the phone or respond. *Id.* Ms. Bishop testified that she received no further communication from Claimant between August 26, 2020, and September 25, 2020, the date of her discharge. *Id.*

Claimant testified that she had "medical documentation" for her absences on August 12-14, 2020, and August 27-29, 2020. *Id.* at 21-22. She testified, however, that she did not give Employer medical documentation for those days because Employer did not ask for it and because she did not want to disclose her health issues. *Id.* at 23-25, 28. Claimant testified that she notified Employer that she would be absent on those days. *Id.* at 23. Claimant admitted, however, that Ms. Bishop did not approve her absences. *Id.* at 24. Claimant also admitted that she did not respond to Ms. Bishop's email regarding her absences on August 13-14, 2020, stating: "I was mindful of that . . . [b]ecause they wrote me up for email etiquette." *Id.* at 27.

Claimant testified that, at that time, she was "closing on [her] home in [Employer's] home ownership program," "managing [her] house and working remotely," and "also doing fieldwork" and "visiting [her] clients." *Id.* at 24. She stopped submitting time records after September 3, 2020, because Employer "shut down [her] system." *Id.* at 25. Claimant testified that she did not contact Ms. Bishop about the system shutdown because she and Ms. Bishop were "not getting along." *Id.* Claimant tried to contact human resources to inquire about the shutdown but was unsuccessful. *Id.* Claimant testified that she continued to work, but she did so without pay and asked Employer for an advance so she could close on her home. *Id.* Claimant testified that she was "supposed to close on [September 4, 2020], but [Employer] didn't [give her] a paycheck." *Id.* at 26. Claimant initially thought the system shutdown "was just a glitch," but she later realized that she had been fired. *Id.* at 25-27.

Following the hearing, the Referee affirmed the Service Center's decision. The Referee concluded:

> Based on the testimony of [E]mployer, and the competent evidence contained in the record, the Referee finds that *[C]laimant was absent without authorization. The conduct of [C]laimant falls below the standards of behavior which an employer can reasonably expect from its employees.* It is reasonable for [E]mployer to expect employees to report to work on time, and contact their supervisor regarding any issues with attendance. Therefore, [E]mployer has met its burden under Section 402(e) of the . . . Law.

Ref.'s Order, 3/17/21, at 3 (emphasis added). The Referee further concluded:

> [C]laimant testified that she was dealing with medical issues which required her to be absent from work. [C]laimant testified that she was closing on a house and dealing with settlement issues in programs that were through [Employer].

4

[C]laimant acknowledged that she did not have authorization from her supervisor to be absent on the dates in question. [C]laimant testified that she had conflicts with her supervisor, and chose to permit her legal representative to speak on her behalf, or [C]laimant would speak directly to Human Resources or other managers.

*The Referee finds that the testimony of [C]laimant has not established good cause or justification for her absences without authorization.* Therefore, as [E]mployer has met its burden under Section 402(e) of the Law, [UC] benefits are denied.

*Id.* (emphasis added).

Claimant appealed to the Board, which adopted the Referee's findings of fact and conclusions of law on the issue of willful misconduct. The Board expressly credited the testimony of Employer's witness regarding Claimant's absences from work and rejected Claimant's argument that she did not intentionally neglect her duties. Board's Order, 9/2/21, at 1-2.

The Board also denied Claimant's request for a remand hearing to present additional evidence, concluding as follows:

[C]laimant requested a remand hearing to present additional testimony and evidence. [C]laimant argues that she was unable to submit her documents [five] days before the hearing because she did not receive the notice of hearing [five] days before the hearing. [C]laimant testified that she received the notice of hearing, but [also that] she "knew about the hearing because she called." *It is not clear from this testimony that [C]laimant did not receive the notice of hearing in time to submit her documents before the deadline. Moreover, [C]laimant testified that she did not submit her documents [five] days before the hearing because "my computer, my laptop malfunctioned," not because she received the notice of hearing too late.*

[C]laimant also argues that the Referee "did not assist her in presenting her case[,]" but *a referee has no obligation to assist a party to present her case. A referee is only obligated to advise a party of her legal rights.* [C]laimant also argues that the Referee cut off her testimony

5

and did not give her a chance to present her case. *The Board conduct[ed] an independent review of the record and finds the Referee's decision to be proper.* Therefore, [C]laimant's request for a remand hearing is denied.

*Id.* at 2 (emphasis added).[3] Claimant now petitions for review of the Board's decision.

## Analysis

Preliminarily, we note that Claimant's *pro se* Petition for Review and appellate briefs are difficult to comprehend. Claimant's briefs also fail to conform to the requirements of our Rules of Appellate Procedure in numerous respects. *See* Pa.R.A.P. 2101; *see also Lal v. Dep't of Transp.*, 755 A.2d 48, 49 (Pa. Cmwlth. 2000) ("This Court has repeatedly held that substantial omissions, defects, and/or failures to conform to the minimal requirements for writing an appellate brief set forth in Chapter 21 of the Pennsylvania Rules of Appellate Procedure will result in the quashing or dismissal of the appeal."). Despite these shortcomings, however, we will address the issues we are able to glean from Claimant's *pro se* filings. *See Richardson v. Pa. Ins. Dep't*, 54 A.3d 420, 426 (Pa. Cmwlth. 2012) (recognizing that this Court may limit its review to the cognizable arguments it can glean from a *pro se* appellant's brief, despite noncompliance with the Rules of Appellate Procedure).

Claimant first asserts that the Board abused its discretion in denying her request for a remand. She contends that the Referee improperly precluded some of her documentary evidence at the hearing and seeks a remand to present additional evidence in support of her claims. Claimant's Br. at 15-17, 30-33.

---

[3] In its decision, the Board noted that "[C]laimant attached documents to her appeal, and refers to facts, which cannot be considered because they are not part of the record." Bd.'s Order, 9/2/21, at 1.

6

The Referee's hearing notice, which was mailed to Claimant on February 17, 2021, informed her that she was required to submit her documents to the Referee's office "at least five (5) days" before the hearing. Record (R.) Item No. 8; *see* 34 Pa. Code § 101.130(e) (stating that, for a telephone hearing, the referee "may require that the documents be delivered up to [five] days in advance of the hearing"). At the hearing, Claimant initially testified that she did not receive the hearing notice and only "knew about the hearing because [she] called" the Department of Labor and Industry (Department). N.T., 3/9/21, at 3. However, Claimant later testified that she *did* receive the hearing notice. *Id.* When asked a second time if she received the notice stating that "the hearing was going to happen today at this time," Claimant replied, "Yes. . . . I did receive that." *Id.* at 4. The Referee was therefore "satisfied that [Claimant] received the documents." *Id.*

The Referee then stated that he received many of Claimant's documents that day, and Employer's tax representative stated that he received Claimant's documents 15 minutes before the hearing began. *Id.* at 5-6; *see* R. Item No. 10. When the Referee asked Claimant why she did not submit the documents until that day, she replied: "My computer, my laptop malfunctioned" and that it was "just the struggle back and forth with trying to . . . get everything together." N.T., 3/9/21, at 6. She testified that she sent the documents after a "place that [she] go[es] to[] . . . [was] nice enough to allow [her] to use [its] facility . . . so [she could] properly submit the documents" to the Referee. *Id.*

Employer objected to the admission of Claimant's documents on the ground that she was required to submit them no later than five days before the hearing. *Id.* The Referee sustained the objection and precluded the documents because "they were not sent in advance" as required by the hearing notice. *Id.*; *see* 34 Pa. Code §

7

101.131(h) (stating that documents not submitted in accordance with the hearing notice "may not be admitted nor testimony given or taken from it *unless consent has been requested from and given by all parties*") (emphasis added). Thus, although the Board's regulations permit the Referee to admit documents not submitted in compliance with the hearing notice, because Employer objected to the admission of Claimant's documents, the Referee properly excluded them. *See Beverly Hall Corp. v. Unemployment Comp. Bd. of Rev.*, 106 A.3d 829, 834 (Pa. Cmwlth. 2014) (concluding that the Board properly affirmed the referee's exclusion of evidence not submitted in advance of the hearing, where the Department objected to such evidence).

Moreover, it is within the Board's discretion whether to grant a request for remand. *See* Section 504 of the Law, 43 P.S. § 824 ("The [B]oard shall have power, on its own motion, or on appeal, to . . . affirm, modify, or reverse the determination . . . of the . . . referee on the basis of the evidence previously submitted in the case, *or direct the taking of additional evidence*.") (emphasis added); *Hussar v. Unemployment Comp. Bd. of Rev.*, 432 A.2d 643, 645 (Pa. Cmwlth. 1981) (stating that the Board has the discretionary power to remand for the taking of additional evidence, if the Board determines that the record before it is inadequate for proper resolution of the issues). This Court will not reverse the Board's decision to deny a request for remand absent an abuse of discretion. *Fisher v. Unemployment Comp. Bd. of Rev.*, 696 A.2d 895, 897 (Pa. Cmwlth. 1997).

Here, after initially testifying that she did not receive the hearing notice, Claimant testified, twice, that she *did* receive it. N.T., 3/9/21, at 3-4. While Claimant may have had additional evidence to support her version of the events leading to her discharge, she did not submit her evidence to the Referee before the

hearing as required by the hearing notice. The Board specifically discredited Claimant's testimony that she could not submit her documents on time due to a computer malfunction. Bd.'s Order, 9/2/21, at 2.[4] Because the documents were available to Claimant before the hearing, we conclude that the Board did not abuse its discretion in denying Claimant's request for a remand. *Cf. Fisher*, 696 A.2d at 897 (recognizing that "a remand hearing is generally granted to allow a party the opportunity to present *evidence not offered at the original hearing because it was not then available*") (emphasis added).

Next, Claimant asserts that the Referee failed to adequately assist her in presenting her case during the hearing. Claimant's Br. at 34. We disagree.

The Board's regulations provide: "[W]here a party is not represented by counsel, the tribunal before whom the hearing is being held should *advise [her] as to [her] rights, aid [her] in examining and cross-examining witnesses, and give [her] every assistance compatible with the impartial discharge of its official duties*." 34 Pa. Code § 101.21(a) (emphasis added). In interpreting this regulation, this Court has held that, in addition to advising a *pro se* litigant of her rights and aiding her in questioning witnesses, the referee "must act reasonably in assisting in the development of the necessary facts." *Hackler v. Unemployment Comp. Bd. of Rev.*, 24 A.3d 1112, 1115 (Pa. Cmwlth. 2011). However, "the referee is not required to become and should not assume the role of a claimant's advocate." *McFadden v. Unemployment Comp. Bd. of Rev.*, 806 A.2d 955, 958 (Pa. Cmwlth. 2002). Furthermore, "[t]he referee need not advise an uncounseled claimant on specific

---

[4] In her Petition for Appeal filed with the Board, Claimant proffered an additional reason why she did not submit her documentary evidence in advance of the hearing, stating that her "lack of finances brought about many restrictions[] [w]hich is one of the main reasons [she] could not meet the five-day deadline in submitting evidence." R. Item No. 13.

9

evidentiary questions or points of law, nor need the referee show any greater deference to an uncounseled claimant than that afforded a claimant with an attorney." *Brennan v. Unemployment Comp. Bd. of Rev.*, 487 A.2d 73, 77 (Pa. Cmwlth. 1985) (citation omitted).

Based on our review of the hearing transcript, this Court is satisfied that the Referee complied with the requirements of 34 Pa. Code § 101.21(a). The Referee gave Claimant ample opportunity to testify and to cross-examine Employer's witnesses, and the Referee asked Claimant several questions to clarify her testimony. *See* N.T., 3/9/21, at 9-11, 22-28. The Referee also asked several questions of Employer's witness, Ms. Bishop. *See id.* at 17-19. At one point, the Referee interrupted Claimant's cross-examination of Ms. Bishop only to ask Claimant to repeat her question because there was background noise on the telephone line. *See id.* at 20. We conclude that Claimant was afforded a fair hearing and that the Referee properly discharged his duties under 34 Pa. Code § 101.21(a). *See Procito v. Unemployment Comp. Bd. of Rev.*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008) (*en banc*).[5]

Lastly, Claimant challenges the Board's credibility findings throughout her appellate briefs. It is well settled, however, that questions of credibility and the resolution of evidentiary conflicts are exclusively within the Board's discretion and may not be re-evaluated on appellate review. *Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1227 (Pa. Cmwlth. 2017). "[T]he

---

[5] In its decision, the Board erroneously stated that "a referee has no obligation to assist a [*pro se*] party to present her case" and "is only obligated to advise a [*pro se*] party of her legal rights." Bd.'s Order, 9/2/21, at 2. This statement contradicts both the plain language of 34 Pa. Code § 101.21(a) and our case law, as discussed above. However, while the Board applied an incorrect standard in evaluating the Referee's conduct at the hearing, we conclude, based on our independent review of the record, that the Referee complied with the Board's regulation and adequately assisted Claimant in presenting her case.

10

Board . . . may reject even uncontradicted testimony if it is deemed not credible or worthy of belief." *Id.* (citation omitted). Where the Board's findings are supported by substantial, credible evidence, those findings are conclusive on appeal. *Brandt v. Unemployment Comp. Bd. of Rev.*, 643 A.2d 78, 79 (Pa. 1994).

The testimony of Claimant's supervisor, which the Board expressly credited, established that Claimant stopped reporting to work, submitting time records, and reporting her absences as of August 26, 2020. Bd.'s F.F. No. 4; Bd.'s Order, 9/2/21, at 1. Claimant also failed to respond to her supervisor's multiple attempts to contact her after that date. Bd.'s F.F. No. 5. Based on this evidence, the Board determined that: (1) Claimant's failure to report to work, submit time records, report her absences, or communicate with Employer was a disregard of Employer's interests and the behavioral standards Employer rightfully expects of its employees; and (2) Claimant lacked good cause for her conduct. Bd.'s Order, 9/2/21, at 1-2; Ref.'s Order, 3/17/21, at 3. We conclude that the Board's findings are supported by the substantial, credible evidence of record.

## **Conclusion**

Accordingly, we affirm the Board's Order.[6]

_____

ELLEN CEISLER, Judge

---

[6] In support of her assertions on appeal, Claimant refers to, and attaches to her *pro se* filings, several documents that are not part of the certified record in this case. It is well settled, however, that this Court may not consider extra-record evidence that is not part of the certified record on appeal. *See Umedman v. Unemployment Comp. Bd. of Rev.*, 52 A.3d 558, 564 (Pa. Cmwlth. 2012); *see also B.K. v. Dep't of Pub. Welfare*, 36 A.3d 649, 657 (Pa. Cmwlth. 2012) ("For purposes of appellate review, that which is not part of the certified record does not exist."). Therefore, in reaching our decision, we do not consider Claimant's extra-record evidence or her arguments based on that evidence.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Yuzza Henderson,                  :
             Petitioner           :
                                      :
       v.                       :   No. 1239 C.D. 2021
                                      :
Unemployment Compensation     :
Board of Review,                  :
             Respondent        :

# O R D E R

AND NOW, this 9th day of March, 2023, the Order of the Unemployment Compensation Board of Review, dated September 2, 2021, is hereby AFFIRMED, and Yuzza Henderson's "Motion to Set Aside/De Novo to Admit Relevant Evidence," filed on February 8, 2023, is hereby DENIED.

                                _____

                                ELLEN CEISLER, Judge